**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Jose Antonio PABLO–LUGONES,
Defendant-Appellant.**

**No. 81–5499
Non-Argument Calendar.**

United States Court of Appeals,
Eleventh Circuit.

Feb. 24, 1984.

2. *Id.* at 57.

Jeffrey A. Miller, Lauderdale, Fla., for defendant-appellant.

Stanley Marcus, U.S. Atty., Nancy L. Worthington, Linda Collins Hertz, Asst. U.S. Attys., Miami, Fla., for plaintiff-appellee.

Before HILL, JOHNSON and HENDERSON, Circuit Judges:

PER CURIAM:

Jose Antonio Pablo-Lugones and codefendant Hector Cacares-Pinero[1] were indicted for conspiracy to commit aircraft piracy, in violation of 49 U.S.C.A. § 1472(i)(1) (Count 1); attempted aircraft piracy, in violation of 49 U.S.C.A. § 1472(i)(1) and 18 U.S.C.A. § 2 (Count 2); and possession of explosive incendiary devices while attempting to board an aircraft, in violation of 49 U.S.C.A. § 1472(*l*)(2) and 18 U.S.C.A. § 2 (Count 3). Appellant was found guilty on all counts.

Pablo-Lugones arrived in the United States in May of 1980 via the Mariel Boatlift. He resided with a sponsor family in Union City, New Jersey, until approximately August 7, 1980. During his stay in New Jersey appellant met codefendant Cacares-Pinero, who is also a Cuban refugee, and both agreed to return to Miami to find passage to Cuba. Appellant and his codefendant arrived in Miami on August 12, 1980. After failing in an attempt to steal a boat for the return trip to Cuba, they looked into the possibility of flying to Key West, Florida. Late on the evening of August 16, 1980, Cacares-Pinero informed Pablo-Lugones that there was a 9:00 a.m. Air Florida flight to Key West the next day and suggested that they purchase some gasoline and place it into small bottles. The gasoline was to be used to intimidate the stewardesses on the flight the next day by threatening to use the gasoline unless the plane was diverted to Cuba. On August 17 they made final preparations for their flight to Cuba. Cacares-Pinero tied his gasoline bottle to a string or rope around his waist. Pablo-Lugones concealed his bottle of gasoline in a folded jacket, which he intended to carry on board the plane. Once they arrived at the airport, flight tickets were purchased and they proceeded through the preliminary inspection station at Miami International Airport and continued on to the departure lounge. Due to an increase in hijackings of Key West flights, a secondary inspection station had been set up in the lounge to search all passengers more thoroughly. At the secondary inspection station Air Florida employees became suspicious of the appellant and his codefendant; an argument ensued between them with a ticket agent at the departure gate. The airport police and security guards were summoned and the bottle that contained gasoline was discovered in appellant's jacket. The other bottle of gasoline was discovered tied to co-conspirator Cacares-Pinero's waist.

After being advised of his rights by agents of the Federal Bureau of Investigation, appellant waived his right to counsel and disclosed their entire plan to use the bottles of gasoline to divert the plane to Cuba.

On this appeal Pablo-Lugones contends that the evidence was insufficient to sustain his conviction under Count 2 of attempting to commit air piracy by force and violence. He specifically argues that, although the evidence showed he was going

1. Cacares-Pinero is not a party to this appeal.

to use threats and intimidation, it was insufficient to prove he used force and violence. In reviewing a claim of insufficient evidence, this Court views the evidence in the light most favorable to the government, *Glasser v. United States,* 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942), making all reasonable inferences and credibility choices in favor of the trier of fact. *United States v. Morano,* 697 F.2d 923, 927 (11th Cir.1983). The applicable standard of review is whether a reasonable trier of fact could find that the evidence establishes guilt beyond a reasonable doubt. *United States v. Bell,* 678 F.2d 547, 549 (5th Cir. Unit B 1982)[2] (en banc), *aff'd on other grounds,* —— U.S. ——, 103 S.Ct. 2398, 76 L.Ed.2d 638 (1983).

■■■ The statute defines aircraft piracy as "any seizure or exercise of control, by force or violence or threat of force or violence, or by any other form of intimidation, and with wrongful intent, of an aircraft." 49 U.S.C.A. § 1472(i)(2). The indictment here charged only that Pablo-Lugones "did attempt to seize by force and violence, an aircraft." Pablo-Lugones claims that, because he did not intend to actually use the gasoline bomb that he tried to carry onto the airplane but intended simply to display it to intimidate the flight crew into taking him to Cuba, the evidence is insufficient to prove the "force and violence" element of attempted air piracy. Such an argument is meritless in this case. It is our opinion that, since a display of a dangerous weapon is a sufficient use of force and violence for the purpose of hijacking, such a contention as appellant makes cannot be accepted. Furthermore, Pablo-Lugones, who does not contest his conviction for conspiracy to commit air piracy, is responsible as a principal for the intended actions of his co-conspirator, Cacares-Pinero, who intended, according to his statement, to burn the airplane if the flight crew did not agree to take him to Cuba. The evidence clearly showed that Pablo-Lugones and his co-conspirator Cacares-Pinero traveled to Miami for the ex-

press purpose of returning to Cuba. Together they purchased gasoline for their carry-on incendiary devices, and obtained tickets for the air flight to Key West. They planned to use the gasoline bombs to force the airline crew to take them to Cuba, and attempted to board the airplane while surreptitiously carrying the gasoline. Despite Pablo-Lugones' trial testimony to the contrary on several points, he admitted these facts in a post-arrest interview. Whether we consider Pablo-Lugones' personal actions, or only those of his co-conspirator and principal, appellant is clearly guilty of attempted air piracy by force and violence.

Appellant claims that this case is identical to *United States v. Figueroa,* 666 F.2d 1375, 1377–80 (11th Cir.1982), and his conviction should therefore be reversed. In *Figueroa,* a defendant was convicted in Miami of attempted air piracy. Figueroa boarded a plane and gave a note to a flight attendant which note stated that the aircraft itself was in no danger, but that a bomb would go off in Tampa and harm innocent people unless Figueroa was taken to Cuba. This Court in *Figueroa* concluded that the evidence was insufficient to prove that Figueroa made any physical gesture of force or violence to seize control of the airplane, since Figueroa had simply threatened in the note to use violence against something other than the airplane. The *Figueroa* opinion points out that the evidence was sufficient to prove that Figueroa had threatened force and violence, but not that he had attempted actual force or violence as charged. Because of the different factual situations the *Figueroa* case is no support for appellant. Both appellant and his co-conspirator attempted to board an airplane while carrying gasoline bombs. The devices were intended to be used to force the crew to divert the plane from its intended course and take them to Cuba. The plan demonstrated an intent to physically coerce compliance, not simply to write

---

**2.** Decisions rendered after September 30, 1981 by the Unit B en banc court of the former Fifth Circuit are binding precedent in this Circuit.

*Stein v. Reynolds Securities, Inc.,* 667 F.2d 33, 34 n. 2 (11th Cir.1982).

or hand over a threatening note as in *Figueroa.*

Pablo-Lugones, as a convicted co-conspirator of Cacares-Pinero, was responsible for all reasonably foreseeable acts committed in furtherance of the hijacking conspiracy. Thus, Pablo-Lugones was properly found guilty of attempted air piracy, not only because of his only attempted acts, but because of Cacares-Pinero's intended actions as well.

AFFIRMED.