UNITED STATES of America, Plaintiff,

v.

Carlos CARDOEN, Franco Saffa, Jorge Burr, Industrias Cardoen Limitada, a/k/a INCAR, Swissco Management Group, Inc., Edward A. Johnson, Ronald W. Griffin, and Teledyne Industries, Inc., d/b/a Teledyne Wah Chang Albany, Defendants.

No. 93–241–CR.

United States District Court,
S.D. Florida.

Aug. 29, 1995.

Nunc Pro Tunc Dec. 28, 1994.

Kendall Coffey, United States Attorney, Frank Tamen, Assistant United States Attorney, Eduardo Palmer, Assistant United States Attorney, Miami, Fla., for Plaintiff.

William J. Linklater, Chicago, IL, for Teledyne Industries, Inc.

Gerald Houlihan, Miami, FL, and Elliot Scherker, Ryan Reetz, Greenberg, Traurig, Hoffman, Lipoff, Rosen & Quentel, P.A., Miami, FL, for Edward A. Johnson.

Brian O'Neill, Santa Monica, CA, for Ronald W. Griffin.

## REISSUED ORDER ON HEARING HELD PURSUANT TO SECTION 6 OF THE CLASSIFIED INFORMATION PROCEDURES ACT *

HIGHSMITH, District Judge.

THIS CAUSE came before the Court at a hearing, held on November 18, 1994, and November 23, 1994, pursuant to Section 6 of the Classified Information Procedures Act. Having considered the evidence presented at the hearing, having heard arguments of counsel, and being otherwise fully advised in the premises, the Court makes the following written findings regarding the use, relevance and admissibility of the classified information sought to be introduced at the upcoming trial of this action, as required by the Act.

### PROCEDURAL HISTORY

In light of the complexity of this case, the Court finds it useful to set out in some detail the procedural history of the litigation.

#### a. The charges:

On May 26, 1993, the grand jury returned a twenty-one count indictment against the above-named defendants. The indictment charges the defendants with violations of the export laws of the United States and with making false statements to the government. These charges arise from the exportation of zirconium and fuze components to Chile, which were allegedly destined for the manufacture of cluster bombs later sold to Iraq. Only three of the eight defendants charged in the indictment have appeared before the Court. They are: Teledyne Industries, Inc. d/b/a Teledyne Wah Chang Albany ("Teledyne"); Edward A. Johnson; and, Ronald W. Griffin. The five defendants who have not appeared are: Carlos Cardoen; Franco Saffa; Jorge Burr; Industrias Cardoen Limitada, a/k/a INCAR; and Swissco Management Group, Inc. ("Swissco").

---

* The Court's Order on Hearing Held Pursuant to Section 6 of the Classified Information Procedures Act, issued on December 28, 1994, and filed with the CIPA Security Officer, is hereby reissued, nunc pro tunc, in unclassified form.

Pursuant to various pretrial motions, the Court has narrowed the scope of the case presently scheduled for trial in February, 1995. On March 22, 1994, the Court dismissed Counts II through VI of the indictment as to Defendant Teledyne, based on the applicable statute of limitations. By order dated April 25, 1994, the Court severed the first ten counts of the indictment, which pertain to zirconium exports, from the last eleven counts, which pertain to the export of fuze components.[1] Thus, the counts of the indictment that are scheduled for trial in February, 1995, and the defendants charged in said counts, are as follows:

Count I: Conspiracy to export ordnance-grade zirconium sponge and compacts illegally and to make false statements to the government in connection with these exports, in violation of 18 U.S.C. § 371, against Cardoen, INCAR, Swissco, Johnson, and Teledyne.

Count II: Use of export license number B100563 on or about May 8, 1987, to export 35,000 pounds of ordnance-grade zirconium sponge contrary to the terms of the Commerce Department license, in violation of 50 U.S.C.App. § 2410(a) and 18 U.S.C. § 2, against Cardoen and Johnson.

Count III: Exportation of 2,640 pounds of ordnance-grade zirconium compacts on or about June 4, 1987, without a State Department license, in violation of 22 U.S.C. § 2778 and 18 U.S.C. § 2, against Cardoen and Johnson.

Count IV: Exportation of 35,000 pounds of ordnance-grade zirconium compacts on or about July 9, 1987, without a State Department license, in violation of 22 U.S.C. § 2778 and 18 U.S.C. § 2, against Cardoen and Johnson.

Count V: Making false statements on or about November 2, 1987, in connection with the application for Commerce Department license number B273941 for exporting 1,144 pounds of ordnance-grade zirconium compacts, in violation of 18 U.S.C. § 1001 and 18 U.S.C. § 2, against Cardoen and Johnson.

Count VI: Exportation of 1,144 pounds of ordnance-grade zirconium compacts on or about January 9, 1988, without a State Department license, in violation of 22 U.S.C. § 2778 and 18 U.S.C. § 2, against Cardoen and Johnson.

Count VIII: Making false statements on or about June 23, 1988, in connection with the application for Commerce Department license number B335756 for exporting 100,000 pounds of ordnance-grade zirconium sponge, in violation of 18 U.S.C. § 1001 and 18 U.S.C. § 2, against Cardoen, INCAR, Johnson, and Teledyne.

Count X: Making false statements to government agents on or about January 27, 1993, in violation of 18 U.S.C. § 1001, against Griffin.[2]

*b. The elements of the charged offenses:*

As may be gleaned from the foregoing summary, the charged substantive offenses consist of:

● exportation of ordnance-grade zirconium compacts without a State Department license, in violation of the Arms Export Control Act, 22 U.S.C. § 2778;

● exportation of ordnance-grade zirconium sponge contrary to the terms of a Commerce Department license, in violation of the Export Administration Act, 50 U.S.C.App. §§ 2401–10; and

● making false statements to government agents and/or agencies, in violation of 18 U.S.C. § 1001.

As to several of the counts, the government charges the commission of these offenses

---

1. Defendants Johnson, Griffin, and Teledyne also moved for severance from co-defendants Cardoen, Saffa, Burr, and INCAR. By separate order, which was also issued on April 25, 1994, the Court denied this motion.

2. None of the defendants who have appeared before the Court are charged in Counts VII and IX.

both directly and through aiding and abetting, pursuant to 18 U.S.C. § 2.

■ To establish a violation of the Arms Export Control Act, 22 U.S.C. § 2778, the government must prove that a defendant willfully exported defense articles, which fall within the United States Munitions List, without a license from the State Department. *United States v. Obiechie,* 825 F.Supp. 1335, 1341 (N.D.Ill.1993), *rev'd on other grounds,* 38 F.3d 309 (7th Cir.1994). Because the Act imposes criminal sanctions only on those persons who violate it "willfully," the government has the burden of proving specific intent as to this offense. *United States v. Adames,* 878 F.2d 1374, 1377 (11th Cir.1989). To establish a violation of the Export Administration Act through the exportation of materials, contrary to the terms of a Commerce Department license, the government must prove that a defendant knowingly violated the terms of the license. 50 U.S.C.App. § 2410(a). *See also United States v. Geissler,* 731 F.Supp. 93, 99–100 (E.D.N.Y.1990); *United States v. Gregg,* 829 F.2d 1430, 1436–37 (8th Cir.1987), *cert. denied,* 486 U.S. 1022, 108 S.Ct. 1994, 100 L.Ed.2d 226 (1988). As to the charges of making false statements to government agents and/or agencies, the relevant statute makes it an offense for anyone, in any matter within the jurisdiction of any department or agency of the United States, to knowingly and willfully falsify, conceal, or cover up by any trick, scheme, or device, a material fact; or to make any false, fictitious or fraudulent statements or representations; or to make or use any false writing or document knowing the same to contain any false, fictitious, or fraudulent statement or entry. 18 U.S.C. § 1001. To establish this offense the government must prove: that a defendant knowingly made a false statement or made or used a false document, in relation to a matter within the jurisdiction of a department or agency of the United States; that the false statement or false document related to a material matter; and that the defendant acted willfully and with knowledge of the falsity. Offense Instruction No. 29, *Pattern*

*Jury Instructions for Criminal Cases,* Eleventh Circuit Court of Appeals, 1985.

■ In addition to the foregoing substantive offenses, the indictment charges several defendants with conspiracy to engage in these offenses, in violation of 18 U.S.C. § 371. To establish the commission of this crime as to a particular defendant, the government must prove the existence of the conspiracy; that the defendant willfully became a member of the conspiracy; and that one of the alleged conspirators knowingly committed at least one of the overt acts described in the indictment, in furtherance of the conspiracy. Offense Instruction No. 4.1, *Pattern Jury Instructions for Criminal Cases,* Eleventh Circuit Court of Appeals, 1985. Similarly, as to the aiding and abetting charge under 18 U.S.C. § 2, the government must prove that the aider and abettor willfully associated himself with the substantive crime charged, and willfully participated in it. Special Instruction No. 6, *Pattern Jury Instructions for Criminal Cases,* Eleventh Circuit Court of Appeals, 1985.

*c. Discovery of classified information:*

In the course of the pretrial proceedings in this action, the Court has entertained a number of motions submitted by Defendants Teledyne, Johnson, and Griffin, seeking to compel production of classified information by the government. In support of their numerous motions, these defendants have claimed that the classified information sought was material to their defense, and therefore constituted discoverable evidence, pursuant to *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) and *Fed. R.Crim.P.* 16.

In its order of May 19, 1994, the Court analyzed in depth the defendants' contentions. The Court noted that a number of the offenses charged in the indictment require willfulness as an element of the offense.[3] As to the specific intent element of these offenses, the Court recognized in its order that

---

**3.** The foregoing discussion of the offenses charged in the indictment, and their respective elements, makes it clear that the intent element of willfulness applies to every substantive offense, except one. The alleged violations of the Export Administration Act require knowledge as the intent element. In addition, the aiding and abetting and conspiracy charges also require proof of willfulness on the part of a defendant to associate with the crime.

the defendants may attempt to show that they lacked the required criminal intent because they honestly believed that they were performing an otherwise criminal act in cooperation with the government. *See United States v. Baptista–Rodriguez,* 17 F.3d 1354, 1368 n. 18 (11th Cir.1994); *United States v. Anderson,* 872 F.2d 1508, 1517–18 (11th Cir.), *cert. denied,* 493 U.S. 1004, 110 S.Ct. 566, 107 L.Ed.2d 560 (1989). Based on this analysis, the Court explicitly held that evidence of knowledge on the part of the government regarding the events described in the indictment would be allowed to be introduced at trial, only as follows:

i. The Court will allow evidence of an act or conduct on the part of the government from which it can be reasonably inferred that the government had knowledge of use of zirconium exported from the United States in the manufacture of military ordnance by Carlos Cardoen or his facilities in Chile;

ii. Prior to the admission of such evidence, the defendants must demonstrate that they had knowledge of such act or conduct on the part of the government; and

iii. The government's act or conduct and the defendants' knowledge must impact on the issue of the specific intent requirement for a conspiracy conviction under Count I, or one of the other counts in the indictment requiring specific intent as an element of the offense.

*Order on Pending Motions,* May 19, 1994, at 3–4.

■ In addition, the Court acknowledged the availability of the defense of reasonable reliance on the actual authority of a government official who authorizes a defendant's conduct. To establish this defense, a defendant must show:

[T]hat the governmental entity involved had the real authority to sanction conduct that would violate the laws under which

the defendant is charged; and that the defendant acted in reasonable reliance on an actual U.S. government agent.

*United States v. Lopez–Lima,* 738 F.Supp. 1404, 1408 (S.D.Fla.1990) (Ryskamp, J.). *See also United States v. Baptista–Rodriguez,* 17 F.3d 1354, 1368 n. 18 (11th Cir.1994) ("A defendant legitimately may rely ... on a government official's real authority to authorize the defendant's conduct."). The Court rejected, however, the defendants' attempt to assert the defense of reliance on *apparent,* rather than *actual,* governmental authority; and specifically held that "official acquiescence" is not a cognizable defense in this action. *Order on Pending Motions,* May 19, 1994, at 2–3.

Shortly thereafter, on May 25, 1994, the Court issued a discovery order, which resulted in the production of a number of classified documents by the government. The documents which the Court ordered the government to produce fall within the following two categories of classified information: contacts between certain United States representatives and Defendant Carlos Cardoen; and, government inter-agency communications pertaining to Defendant Carlos Cardoen and/or to sales of "dual use items" to Chile, Cardoen, or Iraq.[4]

d. *Pre-trial notices filed pursuant to the Classified Information Procedures Act:*

The Classified Information Procedures Act ("CIPA") "established a procedural framework for ruling on questions of admissibility involving classified information before introduction of the evidence in open court." *United States v. Anderson,* 872 F.2d 1508, 1514 (11th Cir.1989) (citing S.Rep. No. 823, 96th Cong. 2d Sess. 1, *reprinted in* 1980 U.S.C.C.A.N. 4294). Pursuant to section 5 of the Act, a criminal defendant who reasonably anticipates the disclosure of classified information at trial must file a notice apprising the court and the government of such intention, within the time period prescribed by the

4. The significance of "dual use items" derives from the fact that military pyrotechnic materials having dual military and commercial use are excluded from the United States Munitions List. 22 C.F.R. § 121.1(V)(d) (1994). On January 24, 1983, the Office of Munitions Control issued a determination letter excluding certain Teledyne zirconium products from the Munitions List, pursuant to this provision. (Defendants' Composite Exhibit D).

court. 18 U.S.C.App. III § 5. In accordance with this requirement and the Court's schedule, Defendants Teledyne, Johnson, and Griffin filed their CIPA § 5 notice on June 15, 1994, and their supplemental CIPA § 5 notice on August 1, 1994. In their original notice, the defendants listed the following classified materials, which were produced by the government pursuant to the Court's May 25, 1994, discovery order, to be introduced at trial: [5]

1. Documents A–G, contained in Folder C.
2. Documents under tab numbers 1, 2, and 4, contained in the supplementary submission to Folder B.
3. Exhibit M.
4. Exhibit N.
5. Exhibit O.
6. Materials subject to the Court's Second Protective Order.

In their supplemental notice, the defendants indicated their intention to introduce at trial: those portions of their pleadings that have been classified; potentially classified testimony to be elicited from government employees; and, certain background information of a classified nature regarding the defendants.

In response to the defendants' initial and supplemental CIPA § 5 notices, the government filed timely initial and supplemental requests for *in camera* hearing, pursuant to section 6 of CIPA. This provision states, in pertinent part:

> Within the time specified by the court for the filing of a motion under this section, the United States may request the court to conduct a hearing to make all determinations concerning the *use, relevance,* or *admissibility* of classified information that would otherwise be made during the trial or pretrial proceeding. Upon such a request, the court shall conduct such a hearing.... As to each item of classified information, the court shall set fort in writing the basis for its determination.

18 U.S.C.App. III § 6 (emphasis added). The government's position, as expressed in its original and supplemental requests for a CIPA § 6 hearing, is that classified information is neither relevant nor admissible at the trial of this case.[6]

### THE CIPA HEARING

In compliance with the statutory directive, the Court conducted the CIPA § 6 hearing on November 18, 1994, and November 23, 1994. The hearing had been originally noticed as to all three defendants currently before the Court; namely, Teledyne, Johnson, and Griffin. After reviewing the sealed submissions received from the parties on the eve of the hearing, however, the Court conducted the hearing as to Defendants Johnson and Griffin, only.

*a. Applicable standard:*

■ As previously noted, the purpose of the CIPA § 6 hearing is to determine the use, relevance, and admissibility of the classified information that the defendants propose to introduce at trial. In deciding these issues, the "trial court is vested with broad discretion;" and the court's "ruling will not be disturbed on appeal in the absence of clear abuse of that discretion." *United States v. Anderson,* 872 F.2d 1508, 1515 (11th Cir.1989). Prior to addressing what evidence is relevant and admissible in support of a defense, the court must first determine that the proffered defense is valid. *Anderson,* 872 F.2d at 1515. *See also United States v. Lopez–Lima,* 738 F.Supp. 1404, 1407 (S.D.Fla.1990) ("The issue presented in the section 6 hearing is whether Lopez–Lima has a legally cognizable defense based on classified information, so as to make that information relevant at trial.").

■ After the Court determines the viability of the proffered defenses, the burden of showing the relevance and admissibility of the classified information, sought to be introduced at trial in support on such defens-

---

5. The designation of these documents is derived from the manner in which they were submitted for the Court's *in camera* review, and conforms with the references contained in the Court's discovery order.

6. Indeed, from the inception of this case, the government has maintained the posture that the defendants are not entitled to introduce classified information into this litigation.

es, falls on the defendant. *Lopez–Lima,* 738 F.Supp. at 1407. "Under CIPA, the court must use existing standards for determining relevance and admissibility." *Id.* (citing *Anderson,* 872 F.2d at 1514). Accordingly, classified evidence that is not relevant may be excluded, pursuant to *Fed.R.Evid.* 401 and 402; and relevant classified information may be excluded because it is prejudicial, misleading or confusing, pursuant to *Fed. R.Evid.* 403. *Lopez–Lima,* 738 F.Supp. at 1407.[7]

■ Moreover, "[t]he fact that the information in question is classified should not be considered when determining its admissibility." *Lopez–Lima,* 738 F.Supp. at 1407. In this regard, the Court notes that, in addition to applying Rules 401–403, the Fourth Circuit requires the application of a balancing test to determine the admissibility of classified information. *See United States v. Smith,* 780 F.2d 1102 (4th Cir.1985); *United States v. Fernandez,* 913 F.2d 148 (4th Cir. 1990). This test requires a court to weigh the interests of national security against the necessity for the defendant to have a fair trial. *Smith,* 780 F.2d at 1106–10; *Fernandez,* 913 F.2d at 157. Although the Eleventh Circuit has not addressed this issue, it has been addressed in the Southern District of Florida. In *United States v. Lopez–Lima,* 738 F.Supp. 1404 (S.D.Fla.1990) (Ryskamp, J.), the court, after analyzing Eleventh Circuit precedent that bears on the issue, declined to apply this additional balancing test. *See Lopez–Lima,* 738 F.Supp. at 1407, 1407 n. 3, and 1411 n. 7. The Court finds Judge Ryskamp's reasoning persuasive and similarly declines to adopt the additional Fourth Circuit balancing test in determining the relevance and admissibility of classified information.

■ One additional issue concerning the scope and purpose of the CIPA hearing, which Defendants Johnson and Griffin raise in their post-hearing submission, requires clarification. The defendants argue that any factual issues arising from the testimony presented at the CIPA hearing must be resolved by the jury, rather than the court; and that no amount of testimony from government witnesses can render the classified information that they seek to introduce at trial inadmissible. In support of this proposition, the defendants cite the following authority: *United States v. Goetz,* 746 F.2d 705, 708 (11th Cir.1984) ("The rule is firmly established that the trial judge cannot direct a verdict in favor of the government for all or even one element of a crime."); *United States v. McClain,* 545 F.2d 988, 1003 (5th Cir.1977) (Only the jury may properly decide a relevant factual question.); *United States v. Sheldon,* 544 F.2d 213, 221 (5th Cir.1976) (Jury instruction which, in effect, gives a partial directed verdict on the defense of entrapment, is never legally permissible.); *Bryan v. United States,* 373 F.2d 403, 407 (5th Cir.1967) (Every element of an offense is a jury issue); *Roe v. United States,* 287 F.2d 435, 440 (5th Cir.), *cert. denied,* 368 U.S. 824, 82 S.Ct. 43, 7 L.Ed.2d 29 (1961) ("[N]o fact, not even an undisputed fact, may be determined by the Judge. The plea of not guilty puts all in issue, even the most patent truths.").

In each of the cases relied upon by the defendants the trial judge, through a jury instruction or otherwise, impermissibly removed from the jury's consideration a factual question that was relevant to the determination of guilt or innocence. The scope and purpose of a CIPA hearing, however, is much narrower. As previously discussed, the defendants at a CIPA hearing bear the burden of showing that their asserted defenses are valid; and, of showing the relevance and admissibility of the classified information

---

**7.** Rule 401 states: " 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." *Fed.R.Evid.* 401.

Rule 402 states: "All relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, by Act of Congress, by these rules, or by other rules prescribed by the Supreme Court pursuant to statutory authority. Evidence which is not relevant is not admissible." *Fed.R.Evid.* 402.

Rule 403 states: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." *Fed.R.Evid.* 403.

that they seek to introduce at trial in support of such defenses. The court's rulings on these issues do not invade the jury's province because they do not determine factual questions that are relevant to the determination of guilt or innocence. Indeed, the validity of proffered defenses is a legal question, which falls within the court's purview. Rulings on the relevance and admissibility of classified information prior to trial and the entry of written findings in support of such rulings, properly, fall within the scope and purpose of a CIPA § 6 hearing. *See* S.Rep. No. 823, 96th Cong. 2d Sess. 4, *reprinted in* 1980 U.S.C.C.A.N. 4294, 4297. ("This bill attempts to deal with the 'graymail' problem by requiring a defendant who reasonably expects to disclose or to cause a disclosure of classified information in connection with any trial or pre-trial proceedings to notify the Government *prior to trial*, when possible.") (emphasis added). *See also United States v. Ivy,* No. CRIM.A. 91–00602–04, 1993 WL 316215 (E.D.Pa. Aug. 12, 1993) (Dubois, J.) (discussing the constitutional implications of the CIPA framework, and finding no violation of fifth and sixth amendment rights).

### b. Defense theories:

At the outset of the CIPA § 6 hearing, Defendants Johnson and Griffin enumerated for the Court the defense theories, which they claim provide a predicate for the introduction of classified information at their trial. The asserted defenses are: lack of specific intent; entrapment; CIA actual authority; and, Defendant Carlos Cardoen's alleged status as an agent of the United States government. In their post-hearing submission Johnson and Griffin have raised additional defenses, some of which overlap or are subsumed in the four defenses articulated at the hearing. Specifically, these additional "defenses" are: "Reliance on Government/Individuals' Reliance on Teledyne; Griffin's Lack of Knowledge and Non–Participation in Conspiracy; Government Silence Shows Defendants Did Not Know; The Exports Were Not Contrary To The License Terms; Cardoen Did Not Require Defendants' Assistance; Zirconium Compacts Were Not On The Munitions List; [and] Document Destruction." *Written Submission of Defendants Johnson and Griffin Concerning Ad-*

*missibility of Classified Information,* filed with CIPA Security Officer on November 28, 1994, at 9–13. The Court proceeds to review the elements of those defenses that are recognized in the law and the required evidentiary showing for raising such defenses. A number of the proffered defenses, however, such as "government silence shows defendants did not know," pose a difficult task of interpretation and classification within the framework of offense elements and recognized defenses.

### 1. Lack of specific intent:

■ As previously discussed, the Court has acknowledged the possible applicability of lack of specific intent as a defense in this case. In this regard, the Court has recognized that the defendants may attempt to show that they lacked the required criminal intent because they honestly believed that they were performing an otherwise criminal act in cooperation with the government. *See United States v. Baptista–Rodriguez,* 17 F.3d 1354, 1368 n. 18 (11th Cir.1994); *United States v. Anderson,* 872 F.2d 1508, 1517–18 (11th Cir.1989). For this reason, the Court has required discovery of classified documents pertaining to government acts or conduct from which it can be reasonably inferred that the government had knowledge of use of zirconium, exported from the United States, in the manufacture of military ordnance by Carlos Cardoen or his facilities in Chile, as described in the indictment.

In accordance with the Court's analysis of this issue, however, the relevance and admissibility of such evidence hinges on the defendants' showing: (1) that they had knowledge of such act or conduct on the part of the government; and (2) that the government's act or conduct and the defendants' knowledge impact on the issue of the specific intent. At the CIPA hearing, Defendants Johnson and Griffin proffered no evidence of their own knowledge of the government's acts or conduct and, *a fortiori,* failed to connect the government's acts or conduct and their knowledge to the issue of specific intent. Based on this lack of showing, the Court concludes that the defense of lack of specific intent does not provide a predicate

for the introduction of classified information at the trial of these defendants.

### 2. Entrapment:

 The defense of entrapment "consists of two elements: government inducement of the crime and a lack of predisposition by the defendant to commit the crime." *United States v. Ventura,* 936 F.2d 1228, 1230 (11th Cir.1991). To raise the defense of entrapment, a defendant is not required to admit that he committed the underlying offense. *Mathews v. United States,* 485 U.S. 58, 62, 108 S.Ct. 883, 886, 99 L.Ed.2d 54 (1988). "[E]ven when the defendant denie[s] one or more elements of the offense, the defendant is still entitled to an entrapment instruction whenever sufficient evidence exists from which a reasonable jury could find entrapment." *United States v. Walther,* 867 F.2d 1334, 1339 (11th Cir.1989).

 Thus, the defendant must "present some evidence of government misconduct or improper inducement before the issue is properly raised." *United States v. Gates,* 967 F.2d 497, 499 (11th Cir.1992) (quoting *United States v. Davis,* 902 F.2d 860, 866 (11th Cir.1990)). *See also Ventura,* 936 F.2d at 1230 ("The [defendant] must present sufficient evidence of government inducement to raise the defense."). To meet this burden, the defendant must adduce "more than a scintilla of evidence that improper government conduct created the risk that a person other than one ready to commit the offense was so involved." *Gates,* 967 F.2d at 499. Once the defendant makes the requisite showing, "the burden then shifts to the government to demonstrate beyond a reasonable doubt that the defendant was predisposed to commit the offense charged." *Ventura,* 936 F.2d at 1230 (quoting *United States v. Andrews,* 765 F.2d 1491, 1499 (11th Cir.1985)).

 Moreover, "a defendant cannot avail himself of an entrapment defense unless the initiator of *his* criminal activity is acting as an agent of the government." *United States v. Mers,* 701 F.2d 1321, 1340 (11th Cir.), *cert. denied,* 464 U.S. 991, 104 S.Ct. 481, 78 L.Ed.2d 679 (1983). In *Mers,* the Eleventh Circuit characterized as "ingenious," but rejected the defendant's vicarious entrapment theory, where the defendant had never dealt with or met the government informant and any inducements to commit the crime charged came from the defendant's father, a private citizen. *Mers,* 701 F.2d at 1340. Like the Eleventh Circuit, the majority of the federal circuits do not recognize the defense of vicarious or derivative entrapment. *United States v. Martinez,* 979 F.2d 1424, 1432 (10th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1824, 123 L.Ed.2d 454 (1993). According to the Tenth Circuit, this majority view supports the purpose behind the entrapment defense, which is "to prohibit the government from directly involving an otherwise disinterested and disinclined person [in the commission of] a criminal offense. When the government has no contact with the accused, that purpose has no relevance; therefore, without direct government communication with the defendant, there is no basis for the entrapment defense." *Martinez,* 979 F.2d at 1432.

 At the CIPA hearing, Defendants Johnson and Griffin failed to present any evidence of government inducement through direct government communication with them. Therefore, these defendants have failed to meet the threshold requirement for raising the defense of entrapment. In their post-hearing submission, the defendants claim that certain government conduct in relation to the export licensing process, constitutes inducement. None of the government acts listed, however, were directed to these defendants. Defendant Johnson further claims, in the same post-hearing submission, that he was entrapped by people at Teledyne who were working for the government, including Mark McNabb, William Maurer, Bill Neff, and Admiral Vincent dePoix. Johnson, however, only cites direct communications between himself and McNabb. According to Johnson, "McNabb encouraged Johnson to continue the sales to Cardoen and reassured Johnson that the deals were 'OK.;'" and, after a meeting between Neff and Cardoen, "McNabb told Johnson that it would be 'OK' to continue doing business with Cardoen if Cardoen were required to obtain his own export licenses." *Written Submission of Defendants Johnson and Griffin Concerning Admissibility of Classified Information,* filed with CIPA Security Officer on November 28, 1994, at 8. Even if the Court were to as-

sume the truth of these proffers; i.e., that McNabb was a government agent and that McNabb actually made the cited statements to Johnson, the Court finds that the proffers do not rise above the level of a scintilla of evidence of government inducement, as required for raising the entrapment defense. Thus, Johnson and Griffin have failed to make the threshold showing required for raising the defense of entrapment. Based on this lack of showing, the Court concludes that these defendants may not introduce classified information in support of such defense at their trial.

### 3. Actual Authority:

The Court has previously recognized and defined the parameters of the defense of reasonable reliance on the actual authority of a government official who authorizes a defendant's conduct. As stated earlier, to establish this defense, a defendant must show:

> [T]hat the governmental entity involved had the real authority to sanction conduct that would violate the laws under which the defendant is charged; and that the defendant acted in reasonable reliance on an actual U.S. government agent.

*United States v. Lopez–Lima,* 738 F.Supp. 1404, 1408 (S.D.Fla.1990) (Ryskamp, J.). *See also United States v. Baptista–Rodriguez,* 17 F.3d 1354, 1368 n. 18 (11th Cir.1994) ("A defendant legitimately may rely ... on a government official's real authority to authorize the defendant's conduct.").

Defendants Johnson and Griffin claim that actual authority is a cognizable defense in this case. As best the Court can discern from their submissions, the defendants present two versions of this defense. The first version dispenses with the reliance requirement; the second one predicates reliance on

the defendants' interpretation of government conduct.[8]

#### i. Actual authority; no reliance

First, the defendants assert that the Central Intelligence Agency possessed and exercised actual authority to license the export transactions that are the subject of the indictment and that such authorization nullified the requirement for State Department or Commerce Department export licenses, as to those transactions. Absent the requirement for a license, the theory continues, Defendant Johnson may not be convicted of exporting Munitions List matériel without a State Department license or of exporting Commodities List matériel, contrary to the terms of a Commerce Department license, even if he did not rely on governmental authorization.[9]

According to the defendants, the situation is akin to those where the acts of a government agent or an individual make the occurrence of an element of the charged offense impossible. Thus, the defendants rely on the following impossibility cases: *United States v. Berrigan,* 482 F.2d 171, 184–90 (3d Cir. 1973), in which a prisoner's conviction for attempted smuggling of letters from prison was reversed, because the warden knew about their transmittal; *United States v. Warshawsky,* 818 F.Supp. 181, 183–85 (E.D.Mich.1993), *aff'd in part and rev'd in part on other grounds,* 20 F.3d 204 (6th Cir.1994), where convictions on charges of transporting stolen goods were set aside, because the goods lost their stolen status when FBI agents recovered them and then shipped them to the defendants as part of an undercover investigation; and *United States v. Borges,* 620 F.Supp. 1486, 1486–88 (W.D.Tex. 1985), where the defendants were acquitted

---

8. The Court's attempt to describe this defense in somewhat cogent terms is based on defense counsel's remarks at the CIPA hearing, and on the contents of the following pleadings: "Defendants' Motion to Reconsider Order Concerning Public Authority Defense and Motion to Compel Production," (D.E. # 300, filed with CIPA Security Officer on Oct. 14, 1994); the "Written Submission of Defendants Johnson and Griffin Concerning Admissibility of Classified Information," (filed with CIPA Security Officer on Nov. 28, 1994); and "Defendant Johnson's and Griffin's Reply to Government's Response to Written Submission Concerning Admissibility of Classified Information," (filed with CIPA security Officer on Dec. 13, 1994). At the CIPA hearing, defense counsel referred to this theory of defense as "CIA authority on the issue of entrapment." The written submissions, however, denominate the defense as actual authority of the CIA. The Court adopts the written, rather than the oral, characterization of the defense.

9. Griffin is not charged in any of the export license related counts.

of a charge of forging the endorsement on a treasury check, because the false endorsement was carried out with the payee's permission, albeit as part of a fraudulent scheme.

Moreover, according to the defendants' theory, the CIA's exercise of its actual authority extends to devising a means of maintaining the secrecy of its actions; such as the preparation and filing of inaccurate documents in support of the licenses actually obtained from the Commerce Department, as a "cover" for the transactions. This extended authority takes the license transactions out of the jurisdiction of the government agencies charged with issuing and supervising the "cover" licenses, thereby placing the transaction outside the scope of the false statements statute, 18 U.S.C. § 1001.[10]

█ In summary, the defendants' argument runs as follows. The CIA exercised actual governmental authority to covertly sanction the export transactions that gave rise to the indictment. Such conduct on the part of the CIA makes the occurrence of one or more elements of the crimes charged in the indictment impossible. Therefore, the issue of the defendants' knowledge and/or reliance upon governmental actual authority is irrelevant. There are several flaws in this theory, not the least of which is that the defendants can point to no evidence of CIA authorization of the exports that gave rise to the indictment in this case. To overcome this defect, the defendants presented at the CIPA hearing the expert testimony of Dr. Dale Tahtinen and Dr. Robert Price.

Dr. Tahtinen first established his credentials as an expert in various areas of foreign policy and national security interest, including the area of international trade controls. Based on Dr. Tahtinen's recounting of his previous professional experience, the Court finds his credentials to be impressive. In preparation for his testimony, Dr. Tahtinen reviewed Defendants' Exhibits A–E. These documents relate to Teledyne's commodity jurisdiction request, concerning the zirconium exports to Cardoen, and the licenses issued in connection with these exports. In addition, Dr. Tahtinen reviewed Defendants' Exhibit F, which is a composite of classified documents produced by the government in this case, pursuant to the Court's discovery order. Based on his review of these documents, Dr. Tahtinen expressed the opinion that Teledyne made extensive efforts to cooperate with the government and to keep the government apprised of information in relation to the export licenses. Dr. Tahtinen also opined that the intelligence community was involved in this licensing process and that Defendant Carlos Cardoen was receiving special treatment from intelligence agencies of the United States in connection with the export licenses for zirconium. On cross-examination, however, Dr. Tahtinen was evasive in his responses to the government's specific questions regarding the basis for his opinions. In the course of his testimony, Dr. Tahtinen also expressed his opinion that the defendants in this case are innocent. The Court finds that Dr. Tahtinen's testimony

---

**10.** The defendants derive these arguments regarding the CIA's actual authority from a redacted copy of a pleading filed by the government in a case currently pending in the Eastern District of Pennsylvania. *See Government's Response to Defendant's Statement of Legal Defenses,* filed in *United States v. Ivy,* Criminal Case No. 91–602–04, 1993 WL 316215 (E.D.Pa.), and contained in the record of the instant case as Exhibit A to Defendants' Reply to Government's Response to Defendants' Motion to Reconsider Order Concerning Public Authority Defense, filed November 10, 1994.

In the *Ivy* submission, the government recognized that, "before the Anti–Apartheid Act of 1986, the CIA possessed independent authority that could have allowed it to approve some transfers of military equipment and technology to South Africa under limited circumstances out-

side the framework of the licensing provisions of the Arms Export Control Act or Export Administration Act in the context of a specific intelligence-gathering activity." *Government's Response to Defendant's Statement of Legal Defenses,* filed in *United States v. Ivy,* at 5. Further in this context, the government stated that, although 18 U.S.C. § 1001 prohibits the making of false statements to an agency of the United States in any matter within such agency's jurisdiction, "if the CIA reviewed and approved each transaction in advance and notified at a minimum high-level officials at other relevant agencies (such as the United States Customs Service or Department of Commerce), there would be no false statements within the meaning of the statute, because the relevant agencies would not have been misled." *Id.* at 12.

lacked credibility. It was neither objective nor independent.

The defendants' second expert witness, Dr. Robert Price, has equally impressive credentials in the area of export controls and related activities. Dr. Price also reviewed Defendants' Exhibits A–F in preparation for his testimony. As to this witness, the Court finds that a great deal of what he had to say was credible. The Court, however, found unpersuasive his opinion that Cardoen and his company received preferential treatment in the expediting of orders for zirconium.

To rebut the testimony of these experts, the government presented the testimony of Lyndon Berezowsky, Commerce Department Special Agent in charge of the Miami field office of export enforcement. The Court found the testimony of Agent Berezowsky quite credible. Berezowsky reviewed Government's Exhibits 1–3, which pertain to the arrest of Carlos Cardoen in 1983. The arrest took place when Cardoen was about to embark on a flight from Miami, Florida, to Chile, in possession of five night vision goggles. Berezowsky explained why, in accordance with departmental regulations, this incident did not result in the placement of Cardoen's name on the Commerce Department's table of denial orders. According to Berezowsky, at the relevant time, "People and firms [were] placed on the table of denial orders because of a finding either through an administrative hearing process that they [had] violated the Export Administration Act or based on a prior conviction of the Export Administration Act in a criminal court." (Transcript of CIPA Hearing, November 18, 1994, at 120). The Cardoen case did not fit within these parameters. The Court finds Berezowsky's explanation credible and ac-

cepts this explanation rather than defendants' experts' theory that Cardoen's name was purposely kept out of this table due to preferential treatment on the part of intelligence agencies.[11]

The Court also found credible Berezowsky's testimony concerning the licensing process at the Commerce Department. In particular, the Court accepts his statement that, during the relevant time period, zirconium exports would only be referred for review to the Department of Energy, due to its potential for nuclear applications, but that no other agency review was required. Again, the Court finds this explanation of the licensing process more credible that defendants' experts' theory that a number of agencies, including intelligence agencies, should have been, and in fact were, involved in the licensing of zirconium exports to Cardoen.[12]

As previously mentioned, the defendants did not present any direct evidence in support of their theory that the CIA authorized the export transactions that are the subject of the indictment; but rather attempted to establish an evidentiary predicate in an indirect fashion. Having considered all of the evidence proffered at the CIPA hearing, and having assessed the credibility of the witnesses' testimony, the Court concludes that such evidence does not support a inferential finding that the CIA exercised actual authority to license the export transactions that are the subject of the indictment. In light of this conclusion, the Court need not address the impossibility theory presented by the defendants, through which they attempt to bypass the reliance prong of the actual authority defense. The Court notes, nevertheless, that this thesis is logically flawed. Succinctly stated, the impossibility argument is that the

11. The Court finds nothing in Defendants' Exhibits G and H, which are excerpts of export administration regulations, to affect this determination.

12. The Court also heard the testimony of government witness Robert N, a CIA employee who had debriefed a Teledyne employee, in January 1984. The contents of Mr. N's debriefing report are found in the first classified document in Defendants' Composite Exhibit F. According to the Teledyne employee, as reflected in Mr. N's report, Teledyne had supplied 13 million zirconium pellets to Cardoen, and the size of the order made it most likely that the zirconium would be

used for military ordnance. Mr. N's involvement was obviously limited to receiving and reporting the information, and he did not receive any follow-up instructions upon filing his report. The Court did not find Mr. N's testimony particularly enlightening as to any of the issues for determination at the CIPA hearing.

Pursuant to the defendants' request, the Court also received into evidence, and has reviewed, the respective appendixes to defendants' motion for production of favorable evidence (D.E. # 54), and defendants' motion to dismiss indictment on the basis of outrageous government conduct (D.E. # 303).

CIA's purported authorization of the exports nullified the requirement for export licenses and that, absent the requirement for a license, Defendant Johnson may not be convicted of license related offenses, regardless of any reliance on such authorization. The defendants offer no support for their claim that the CIA's purported authorization of the zirconium exports renders the export license laws inoperative. Indeed, the defendants' very argument contradicts this premise, since they further claim that the CIA's authority extended to the issuance of "cover" licenses, presumably in compliance with such laws. Thus, only the offense of making false statements in connection with the "cover" licenses would be rendered impossible, provided that the CIA disseminated information regarding its conduct to the relevant agencies, thereby preventing such agencies from being misled. However, nothing in the record, other than the defense expert witnesses' speculative opinions, supports an inference of CIA authorization of the zirconium exports to Cardoen, or of CIA dissemination of such information to the affected agencies.

### ii. Actual authority; reliance predicated on defendants' interpretation of government conduct

■ In what appears to be an alternative argument, the defendants claim to have relied on the CIA's purported authorization of the export transactions that are the subject of the indictment. This claimed reliance is not based on actual communications from government officials. Rather, it is predicated on the defendants' claimed interpretation, as articulated by their expert witnesses, of the government's role in the license approval process; as well as the government's inaction regarding the continuation of zirconium exports, after receipt of information from a Teledyne source regarding their potential illegality. Johnson and Griffin further argue that the practice of imparting information regarding national security matters on a "need to know" basis, also known as "compartmentation," precluded their being told all of the details pertaining to the CIA's purported covert authorization of the exports. Since they could not be told, Johnson and Griffin appear to be arguing, they were free to interpret and surmise from the govern-

ment's action, or inaction, that it was "OK" to engage in the transactions described in the indictment, even if such transactions were illegal.

This second version of the actual authority defense suffers from the same basic flaw as the first one; namely, the absence of an evidentiary predicate to support even an inferential finding of CIA authorization. But the problem with this version of the defense runs deeper. The defendants ask the Court to infer reliance from what their expert witnesses claim are permissible interpretations of the government's conduct. Under defendants' theory, it would always be permissible to violate the law, so long as the actor's interpretation of government action, or even inaction, led the actor to infer that the government was condoning the violation. Such an approach would attenuate the reliance prong of the actual authority defense to the point of effective abolition. The Court respectfully declines defendants' invitation to tread down this "primrose path."

Based on the foregoing analysis, the Court concludes that Johnson and Griffin have failed to establish even a minimal factual predicate for the defense of CIA actual authority. Even if such a factual predicate had been satisfied, both versions of the defense of actual authority asserted by the defendants are flawed. Therefore, the Court concludes that the defendants may not introduce classified information in support of such defense at their trial.

### 4. Status of Defendant Cardoen:

■ Johnson and Griffin also argue that Defendant Carlos Cardoen was an agent of the United States government and that such status would defeat a charge of conspiracy with, and of aiding and abetting, Cardoen. See United States v. Kelly, 888 F.2d 732, 740 (11th Cir.1989) ("[I]t is legally impossible to conspire with a government agent or informant who actually aims to frustrate the conspiracy."); United States v. Tombrello, 666 F.2d 485, 490 n. 3 (11th Cir.), cert. denied, 456 U.S. 994, 102 S.Ct. 2279, 73 L.Ed.2d 1291 (1982) ("[G]overnment agents or informers are not true conspirators."). With respect to this theory, the Court notes that Defendant

Johnson is charged, along with Cardoen, in the conspiracy count, as well as in several of the substantive counts. Defendant Griffin, however, is charged in a single count of making false statements to government agents; and he is the sole defendant charged in that count. Because there is no nexus between Defendant Griffin and this defense, the Court shall consider it only with respect to Defendant Johnson.

At the CIPA hearing, the defendants proffered the previously discussed expert testimony in support of this defense theory. To rebut these experts, the government presented the testimony of Linda C., an employee of the Central Intelligence Agency, Directorate of Operations. The Court found quite credible the testimony of Linda C. In preparation for her testimony, Linda C. reviewed the agency's file pertaining to Carlos Cardoen, which contains information gathered over the period 1984 to 1993. Based on her review of the file, Linda C. testified that Cardoen was not an agent or source of intelligence for the United States government; on the contrary, Cardoen was a target; that is, an individual of intelligence interest to the government.

At the hearing, the Court also admitted into evidence, and has considered, the defendants' proffer of a portion of Executive Report, Number 102–09, 102nd Congress, 1st Sess., pertaining to the nomination of Robert Gates as director of the Central Intelligence Agency. According to this report, a relationship between Cardoen Industries and James D. Theberge, while Mr. Theberge served as a member of the CIA Senior Review Panel from January 1986 to January 1988, "may have constituted a conflict of interest and a security concern at worst or an awkward appearance at best." (Transcript of CIPA Hearing, November 23, 1994, at 77). The report continues, "Between 1984 and 1988 Cardoen Industries was of significant intelligence interest to the CIA which believed that Cardoen was the primary supplier of cluster bombs to the Iraqi government and an important supplier of other categories of ordnance to Iraq and other Middle Eastern States." (Transcript of CIPA Hearing, November 23, 1994, at 77–78). Thus, this report corroborates Witness Linda C.'s assessment, based on her review of the CIA file, that Cardoen was a target of intelligence interest to the United States government.

Based on its assessment of the evidence, the Court accepts and adopts, for purposes of the CIPA hearing, Linda C.'s conclusion that Cardoen was not an agent or source of intelligence for the United States government; rather he was an individual of intelligence interest to the government. In making this finding, the Court does not foreclose the presentation of this issue to the jury, provided that a sufficient evidentiary predicate is adduced at trial. The Court's finding is limited to the issue of whether the defendants met the burden of showing the validity of their defense theory that Cardoen was a government agent, for purposes of its serving as a predicate to the introduction of classified information at trial. The Court concludes that the defendants did not meet this burden.

### 5. Additional defenses raised in Johnson and Griffin's post-hearing submission:

As previously mentioned, in addition to the four defenses articulated by their counsel at the CIPA hearing, Johnson and Griffin have raised a number of additional "defenses" in their post-hearing submission, as a predicate for the admission of classified information at their trial. The first of these, denominated by the defendants as "Reliance on Government/Individuals' Reliance on Teledyne," does not lend itself to articulation in terms of recognized defenses. Therefore, the Court finds it necessary to use the defendants' own words to describe this "defense":

> In conducting the export transactions with Cardoen, defendants knew that the government would investigate Cardoen and either verify his end-use or determine to license the transactions for its own reasons. The government's knowledge concerning Cardoen corroborates defendants' expectations....

> Similarly, Johnson and Griffin, who did not prepare, file or review the export applications, relied on Teledyne to handle the license applications properly and to make all appropriate disclosures to the government. Defendants are entitled to show that the company did make the disclosures

to the government to corroborate the reasonableness of their belief.

*Written Submission of Defendants Johnson and Griffin Concerning Admissibility of Classified Information,* filed with CIPA Security Officer on November 28, 1994, at 9. In a subsequent pleading, the defendants restate their theory more succinctly. The classified information must be admitted in order to permit the defendants "to corroborate their lack of criminal intent." *Defendant Johnson's and Griffin's Reply to Government's Response to Written Submission Concerning Admissibility of Classified Information,* filed with CIPA Security Officer on Dec. 13, 1994, at 6–7.

By the defendants' own characterization, this additional defense appears to be, in essence, a variation of the recognized defense of lack of specific intent. A review of the cases cited by the defendants confirms this assessment. *See United States v. Sheffield,* 992 F.2d 1164, 1170 (11th Cir.1993) (In the trial of an Air Force Section Chief, charged with embezzling government property, evidence regarding Air Force Base's gift-making custom was probative of defendant's intent, his state of mind, when he ordered his subordinates to fabricate fishing lure molds.); *United States v. Lankford,* 955 F.2d 1545, 1550 (11th Cir.1992) (Evidence concerning the reasonableness of taxpayer's belief that $1500 he received was a gift rather than taxable income was relevant to the determination of whether the defendant willfully violated the tax laws.); *United States v. Onumonu,* 967 F.2d 782, 784 (2d Cir.1992) (Trial court erred in excluding expert testimony regarding prevalence and feasibility of smuggling diamonds into the United States by swallowing condoms containing packets of diamonds, where the defendant claimed that he did not have the requisite intent to be convicted of the knowing importation and possession of heroin.). Therefore, the Court's prior analysis pertaining to the defense of lack of specific intent is equally applicable to this defense.

In the second of the additional "defenses" proffered by written submission, Defendant Griffin argues that classified information is applicable to the case against him to show his lack of knowledge and non-participation in conspiracy. It is worth noting in connection with this argument, that Griffin is not charged in any of the export license related counts. He is only charged in one count (Count X) with making false statements to government agents during the investigation of this case in January, 1993. No other defendant is charged in Count X. Therefore, there is no predicate in the record for Griffin's need to show his non-participation in the conspiracy charge contained in Count I of the indictment. As to Griffin's argument regarding the use of classified information to show his own lack of knowledge, again, the Court finds that its prior analysis pertaining to the defense of lack of specific intent is equally applicable to this defense.

■ The next defense, "Government Silence Shows Defendants Did Not Know," is also difficult to synthesize. It appears to be predicated on Dr. Tahtinen's expert testimony regarding the existence of a "partnership" between the government licensing agencies and exporters. According to this theory, if the government receives suspicious information regarding certain export transactions, but keeps silent and licenses such transactions, the government has violated this partnership relationship with the exporters. According to the defendants, the logical explanation for such failure on the part of the government to hold its end of the bargain is a 'coverup' scheme. Part of this alleged scheme would have consisted of keeping the defendants in the dark regarding Cardoen; and this government decision to keep silent corroborates the defendants' lack of knowledge.

As previously noted, the Court has found the testimony of Dr. Tahtinen lacking in credibility. Therefore, the Court finds no merit in the defendants' "partnership theory," upon which this asserted defense is grounded. Moreover, the defendants' derivation of a coverup theory from the government's "silence" and the corroborative effect of the alleged coverup upon defendants' lack of knowledge defies logic. Therefore, the Court concludes that "Government Silence Shows Defendants Did Not Know" is not a cognizable defense in this case.

■ Another "defense" asserted by Johnson and Griffin is that the exports were not

contrary to Commerce Department license terms. This proffered defense is another variation on the issue of intent. Here, however, the defendants argue that the government's knowledge and intent are at issue because the export licenses are legally operative documents, which must be construed according to the intent of the government, as well as the defendants. In support of this proposition, the defendants cite a number of cases pertaining to such legal documents as a consent decree, a tariff, a trust instrument, a military enlistment contract, and workers' compensation surety bonds. The defendants do not articulate, and the Court is unable to discern, how these cases are applicable to export licenses. Assuming that export licenses are indeed legal documents requiring interpretation, however, such a task is a legal issue for the court, not a factual issue for the jury. Therefore, the Court finds that this asserted "defense" does not support the introduction of classified documents at trial.

 An interesting "defense" raised by the defendants in their post-hearing submission is that Cardoen did not require defendants' assistance to conduct his alleged export scheme. The defendants cite two cases in support of this argument: *United States v. Cohen*, 888 F.2d 770 (11th Cir.1989) and *United States v. Calle*, 822 F.2d 1016 (11th Cir.1987). In *Cohen*, the Eleventh Circuit ruled that prior acts evidence should have been admitted, pursuant to *Fed.R.Evid.* 404(b), as probative of the ability of a government informant, who testified at trial, to carry on an illegal enterprise without the assistance of the defendants. *Cohen*, 888 F.2d at 775–77. In *Calle*, the Eleventh Circuit determined that the trial court erred in excluding testimony which would have revealed a testifying government informant to have been a major drug dealer, rather than the small timer he portrayed himself to be, thereby making defendant's assertion that he was not the true source of drugs in a sting transaction, more credible. *Calle*, 822 F.2d at 1020–21. Thus, what the defendants are characterizing as a defense, is nothing more than the admission of evidence to impeach a government witness who, obviously to gain grace with the government, colors his testimony to magnify the role of the defendant in a criminal enterprise. For this situation to

arise in this case, Defendant Carlos Cardoen would have to appear at defendants' trial and testify on behalf of the government. Due to Cardoen's present fugitive status, such an event appears unlikely at this juncture. Absent such a predicate, the Court finds the rationale of *Cohen* and *Calle* inapplicable to this case.

 The defendants also present as a defense the proposition that zirconium was not on the Munitions List. In its response to the defendants' submission, the government states that this issue does not involve classified information. Indeed, earlier in this opinion, the Court has referred to State Department's correspondence, which is not classified, informing Teledyne of its determination that zirconium did not fall within the parameters of the United States Munitions List because of its potential for dual military and commercial use. In reply, the defendants point to a number of classified documents, which they claim are relevant to this issue. The Court has reviewed these documents and fails to discern any such connection. In any event, the Court does not find this proposition to constitute a defense that would support the introduction of classified information at trial.

 Finally, the defendants argue that evidence of document destruction gives rise to the inference that the documents destroyed would have been favorable to the defendants. According to the defendants, legends contained in a number of the classified documents produced by the government supports their contention that relevant, helpful documents have been destroyed. In this regard, the Court accepts and adopts Witness Linda C.'s definition of the term "temporary working copy," as it appears on various classified documents produced by the government in this case. According to Ms. C., the term "temporary working copy" arises from the CIA's reliance on an electronic data base system. The nomenclature is used to distinguish such documents from the official record copy of a document; and CIA employees are encouraged to destroy the "temporary working copies" after they are through using them. Thus, defendants' claim that documents have been purposely destroyed by the government is as specula-

tive as their cover-up theory. Such speculation does not serve as a predicate for the introduction of classified information at trial.

### CONCLUSION

Based on the foregoing analysis, the Court concludes that Defendants Johnson and Griffin have not carried the initial burden of showing that their proffered defenses are valid. *United States v. Anderson*, 872 F.2d at 1515; *United States v. Lopez–Lima*, 738 F.Supp. at 1407. Because none of the defendants' asserted defenses are viable, the classified information which the defendants seek to introduce at trial in support of such defenses is neither relevant nor admissible.

■ Further in this regard, the Court notes that, in their post-hearing submission, the defendants claim that they are entitled to a second CIPA § 6 hearing, for the purpose of conducting an item-by-item review of all documents listed in their CIPA § 5 notice and supplementary notice. In light of the Court's determination regarding the lack of viability of the proffered defenses, this request is moot. In any event, section 6 of CIPA requires use, relevance, and admissibility determinations regarding "classified information, not particular classified documents." *United States v. Fernandez*, 913 F.2d 148, 156 (4th Cir.1990). Therefore, the request for a second CIPA § 6 hearing lacks merit.

Hence, it is hereby

ORDERED AND ADJUDGED that, as to Defendants Johnson and Griffin, the classified information listed in their CIPA § 5 notice and supplemental notice SHALL NOT BE ADMITTED at the trial of this case. In accordance with section 6(d) of CIPA, it is further

ORDERED AND ADJUDGED that the record of the CIPA hearing SHALL BE SEALED and MAINTAINED in the custody of the Court Security Officer for use in the event of an appeal.

DONE AND ORDERED.